## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| STANLEY HAWKINS, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF ELIZABETH PAIGE HAWKINS, DECEASED; AND LACY PAIGE McKEE, | § § § § § § | CASE NO. 5:13-cv-00121 |
| **Plaintiffs,** | § § | |
| v. | § § | |
| NEXION HEALTH MANAGEMENT, INC.; NEXION HEALTH AT BOGATA, INC., d/b/a REGENCY HEALTHCARE AND REHABILITATION CENTER AT RED RIVER; NEXION HEALTH LEASING, INC.; NEXION HEALTH OF TEXAS, INC.; AND NEXION HEALTH, INC., | § § § § § § § § | |
| **Defendants.** | § § | |

## PLAINTIFFS' THIRD AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiffs, Stanley Hawkins, Individually and as Independent Executor of the Estate of Elizabeth Paige Hawkins, Deceased; and Lacy Paige McKee, file this their Third Amended Original Complaint complaining of Nexion Health Management, Inc.; Nexion Health at Bogata, Inc. d/b/a Regency Healthcare and Rehabilitation Center at Red River; Nexion Health Leasing, Inc.; Nexion Health of Texas, Inc.; and Nexion Health, Inc. and for cause of action Plaintiffs would respectfully show the Court the following:

## I. PARTIES

1.1     Plaintiff, Stanley Hawkins, an individual, is a citizen of the State of Texas residing at 940 CR 3350, Avery, Red River County, Texas, 75554.   Plaintiff, Stanley Hawkins, sues in his individual capacity and as the Independent Executor of the Estate of Elizabeth Paige Hawkins. Elizabeth Paige Hawkins was a citizen of the State of Texas and a resident of Red River County, Texas, at the time of her death and she left a valid unrevoked written Will naming the Plaintiff, Stanley Hawkins, to serve without bond as Independent Executor of her estate.   The Will was admitted to probate on March 13, 2013, and the matters with regard to the estate of Elizabeth Paige Hawkins are pending in *In Re the Estate of Elizabeth Paige Hawkins, Deceased*; Cause No. PR07383; In the County Court of Red River County, Texas.

1.2     Plaintiff, Lacy Paige McKee, an individual, is a citizen of the State of Texas residing at 940 CR 3350, Avery, Red River County, Texas, 75554.   Plaintiff, Lacy Paige McKee, sues in her individual capacity.

1.3     Defendant, Nexion Health Management, Inc., is a Delaware corporation maintaining its principal place of business in the State of Maryland, and may be served with process through its registered agent for service, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas, 75201, and is before this Court for all purposes.

1.4     Defendant, Nexion Health at Bogata, Inc., is a Delaware corporation maintaining its principal place of business in the State of Maryland, and may be served with process through its registered agent for service, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas, 75201, and is before this Court for all purposes.

1.5     Defendant, Nexion Health Leasing, Inc., is a Delaware corporation maintaining its principal place of business in the State of Maryland, and may be served with process through its

registered agent for service, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas, 75201, and is before this Court for all purposes.

1.6     Defendant, Nexion Health of Texas, Inc., is a Delaware corporation maintaining its principal place of business in the State of Maryland, and may be served with process through its registered agent for service, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas, 75201, and is before this Court for all purposes.

1.7     Defendant, Nexion Health, Inc., is a Delaware corporation maintaining its principal place of business in the State of Maryland, and may be served with process through its registered agent for service, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas, 75201, and is before this Court for all purposes.

## II. JURISDICTION AND VENUE

2.1     This Court has jurisdiction of the claim pursuant to 28 U.S.C. §1332(a) because a complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00.

2.2     This Court has venue pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Texas.

## III. AGENCY/RESPONDEAT SUPERIOR

3.1     Whenever it is alleged in this Complaint that Nexion Health Management, Inc. did any act or thing, it is also meant that its agents, servants, employees, ostensible agents, agents by estoppel and/or representatives including, but not limited to, nurses, aides and other caregivers at Nexion Health Management, Inc. did such act or thing and at the time such act or thing was done, it was done with Nexion Health Management, Inc.'s authorization or was done in the normal routine course of the agency or employment of Nexion Health Management, Inc.

---

**Plaintiffs' Third Amended Original Complaint**                                              Page 3 of 23

3.2     Whenever it is alleged in this Complaint that Nexion Health at Bogota, Inc. d/b/a Regency Healthcare and Rehabilitation Center at Red River did any act or thing, it is also meant that its agents, servants, employees, ostensible agents, agents by estoppel and/or representatives including, but not limited to, nurses, aides and other caregivers at Nexion Health at Bogota, Inc. d/b/a Regency Healthcare and Rehabilitation Center at Red River did such act or thing and at the time such act or thing was done, it was done with Nexion Health at Bogota, Inc. d/b/a Regency Healthcare and Rehabilitation Center at Red River's authorization or was done in the normal routine course of the agency or employment of Nexion Health at Bogota, Inc. d/b/a Regency Healthcare and Rehabilitation Center at Red River.

3.3     Whenever it is alleged in this Complaint that Nexion Health Leasing, Inc. did any act or thing, it is also meant that its agents, servants, employees, ostensible agents, agents by estoppel and/or representatives including, but not limited to, nurses, aides and other caregivers at Nexion Health Leasing, Inc. did such act or thing and at the time such act or thing was done, it was done with Nexion Health Leasing, Inc.'s authorization or was done in the normal routine course of the agency or employment of Nexion Health Leasing, Inc.

3.4     Whenever it is alleged in this Complaint that Nexion Health of Texas, Inc. did any act or thing, it is also meant that its agents, servants, employees, ostensible agents, agents by estoppel and/or representatives including, but not limited to, nurses, aides and other caregivers at Nexion Health of Texas, Inc. did such act or thing and at the time such act or thing was done, it was done with Nexion Health of Texas, Inc.'s authorization or was done in the normal routine course of the agency or employment of Nexion Health of Texas, Inc.

3.5     Whenever it is alleged in this Complaint that Nexion Health, Inc. did any act or thing, it is also meant that its agents, servants, employees, ostensible agents, agents by estoppel

and/or representatives including, but not limited to, nurses, aides and other caregivers at Nexion Health, Inc. did such act or thing and at the time such act or thing was done, it was done with Nexion Health, Inc.'s authorization or was done in the normal routine course of the agency or employment of Nexion Health, Inc.

## IV. FACTS

4.1    Plaintiffs would show that, at all times material to the Plaintiffs' claims, the Defendants were healthcare providers as defined by Tex. Civ. Prac. & Rem. Code section 74.001(a)(12) and described hereinafter.   On October 24, 2012, Elizabeth Paige Hawkins (Mrs. Hawkins) was a resident of Regency Healthcare and Rehabilitation Center at Red River (Regency) in Clarksville, Red River County, Texas.   The Defendants, Nexion Health Management, Inc.; Nexion Health Leasing, Inc.; Nexion Health of Texas, Inc.; and Nexion Health, Inc., (Nexion Defendants) owned, operated, controlled and/or were affiliated with Regency.

4.2    The said Defendants were, at the time Mrs. Hawkins was a resident at Regency, a nursing home duly licensed, certified, registered, or chartered by the State of Texas to provide health care as defined by Tex. Civ. Prac. & Rem. Code section 74.001(a)(21).   Alternatively, the said Defendants were, at all relevant times, an officer, director, shareholder, member, partner manager, owner or affiliate of a health care provider and an employee, independent contractor, or agent of a health care provider acting in the course and scope of the employment or contractual relationship.   Tex. Civ. Prac. Rem Code section 74.001(a)(12)(B)(i)(ii).   Further, as affiliates of a healthcare provider, Defendants, at all relevant times, directly or indirectly, through one or more intermediaries, controlled, was controlled by, or was made under common control with a specified person (or entity), including any direct or indirect parent or subsidiary.   Tex. Civ. Prac. Rem. Code section 74.001(a)(1). Control was exercised by possession, directly or indirectly, of the

---

**Plaintiffs' Third Amended Original Complaint**                                                                          **Page 5 of 23**

power to direct or cause the direction of the management and policies of the person (or entity), whether through ownership of equity or securities by contract or otherwise.   Tex. Civ. Prac Rem. Code section 74.001(a)(1)(3).

4.3     Specifically, the Nexion Defendants, directly or indirectly, at all times material, had possession of the power to direct or cause the direction of the management and policies of Regency by hiring the Administrator, and other employees of Regency, providing and approving Regency's budget, training of Regency's staff, supervising the clinical care of Regency's residents, providing policy for clinical care at Regency, controlling and receiving the care payments made by residents at Regency, providing accounting services for Regency, paying vendors for Regency, paying Regency employees, requiring regular reports from Regency concerning revenues and expenses, requiring reports from Regency concerning incidents such as fatal events causing the death of Mrs. Hawkins, providing employees of Nexion Defendants to control and supervise the operations of the Regency facility, and providing employees of Nexion Defendants to control and supervise the human resources at Regency, requiring employees of Nexion Defendants to participate and direct investigations on the premises of Regency concerning incidents such as the fatal events resulting in the death of Mrs. Hawkins, and by other means and methods.   Moreover, Nexion Defendants, at all times material, had possession of the power to direct or cause the direction of the management and policies of Regency in that they had common officers and directors with Regency.   Plaintiffs would further show that the Nexion Defendants, Nexion Health of Texas, Inc.; Nexion Health Leasing, Inc.; and Nexion Health, Inc. have acknowledged in license applications with the Texas Department of Aging and Disability Services that they are a controlling person (entity) of Regency. Also, Nexion Health, Inc. has, in filings with the Texas Secretary of State, acknowledged that it is

the sole owner of Regency. The listing of manner and methods of Nexion Defendants' control over Regency is not all inclusive as discovery is ongoing.

4.4    Mrs. Hawkins was a 50 year old lady who suffered from a severe diabetic condition requiring continual administration of insulin by an insulin pump. Mrs. Hawkins' physician provided orders to the nursing home which specified the maximum range for Mrs. Hawkins' glucose level. When that level was exceeded, the staff of the nursing home were to advise the physician. On numerous occasions, Mrs. Hawkins' blood sugar levels exceeded the level required for reporting to her physician and the staff took no action to report the excessive levels though, frequently, the recorded levels were dangerously high.

4.5    Mrs. Hawkins suffered from depression and dementia. This condition contributed to Mrs. Hawkins' tendency to leave the nursing home facility. Nursing home residents with this tendency are classified as a "risk for elopement." At all times material, the Defendants' records concerning Mrs. Hawkins' care noted that she was a risk for elopement. A resident, who is a risk for elopement, requires the constant supervision of nursing home staff when the resident is outside the nursing home building.

4.6    In the early morning hours of October 24, 2012, the staff of the Defendants' nursing home allowed Mrs. Hawkins to go outside of the building without any supervision. On the morning of October 24, 2012, when Mrs. Hawkins exited the nursing home, the nursing home staff allowed Mrs. Hawkins to leave the facility without supervision. As a result of the failure of the Defendants to properly supervise Mrs. Hawkins, she left the grounds of the nursing home and walked onto, and crossed, heavily-traveled U.S. Highway 82. As she crossed the highway, she fell into a ditch, three to five feet in depth, containing a concrete culvert. As a result thereof, she suffered serious fractures to her arm and foot, as well as other injuries. Mrs. Hawkins, unable to

stand, remained in the ditch alone and in excruciating pain for forty-five minutes to an hour. Eventually, employees of the nursing home who were outside on a smoke break heard Mrs. Hawkins' cries for help as she lay injured in the ditch some distance away. They went to Mrs. Hawkins and found her in great pain and unable to stand. Rather than immediately calling 911 and reporting the injury and without making any report as required by law, but using a cell phone, they called co-workers inside the nursing home requesting that they come with a wheelchair.

4.7    Four (4) employees of the Defendants gathered in the ditch around the seriously injured Mrs. Hawkins and, though she was expressing great pain, they loaded her into the wheelchair and wheeled her back across the highway and into the nursing home. They placed Mrs. Hawkins in her bed and when it appeared that her suffering was too great to ignore, they decided to seek medical assistance, and they called emergency medical services (EMS). The four employees of the Defendants then conspired together to falsely report that Mrs. Hawkins' injuries resulted from a fall in her room. This path was chosen instead of reporting how the fall actually happened in an attempt to conceal their own negligence in allowing her to go outside the nursing home without supervision.

4.8    Upon arrival at the nursing home, the emergency personnel (EMTs) were directed to Mrs. Hawkins' room but none of the staff or persons with knowledge of the facts concerning her fall went to her room or assisted the EMTs in providing care to Mrs. Hawkins. The EMTs asked Mrs. Hawkins how her injuries occurred, and she told them that she fell while outside the facility. As the EMTs were removing Mrs. Hawkins, they repeated Mrs. Hawkins' version of events to the employees of the Defendants who were involved in the conspiracy to cover up the actual events. Those employees adamantly contradicted Mrs. Hawkins' version of events and stated that Mrs. Hawkins had fallen in her room. The EMTs, relying on the nursing home staff's

version of events, reported to the treating healthcare providers at the emergency room of the hospitals that Mrs. Hawkins' injuries were the result of a nursing home fall.

4.9     Mrs. Hawkins was taken to the Paris Regional Medical Center in Paris, Texas.   She was seen there by an orthopaedic doctor who examined and x-rayed her and found fractures of the left arm and foot.   The physician provided normal treatment by stabilizing the fractures and trying to make Mrs. Hawkins as comfortable as possible.   Nursing home personnel returned Mrs. Hawkins to the nursing home at approximately 9:00 a.m. the morning of October 24, 2012, where she remained confined to her bed and room for the remainder of that day and night.   Though Mrs. Hawkins continued to suffer as a result of her traumatic injuries, little attention was given to her by the nurses and aides employed by the Defendants.   It was documented in the records of Regency that Mrs. Hawkins was a brittle diabetic requiring frequent testing, assessing and reporting elevated levels of her glucose to her physician.   Despite the information available to the staff of Regency and the knowledge of her traumatic injuries, confining her to her bed, the nursing staff failed to adequately monitor Mrs. Hawkins' condition, test and assess her glucose level and report excessive glucose levels and her change in condition to her physician on October 24, 2012.

4.10     At 6:30 a.m. on October 25, 2012, employees of the Defendants purportedly checked the glucose level of Mrs. Hawkins and recorded it at a level far above the level required for reporting to her physician, and no report was made.   Later than morning, Mrs. Hawkins' husband carried her to the orthopaedic physician in Paris, Texas, for further treatment of her fractures.   She was returned to Defendants' care at approximately 11:45 a.m. on October 25, 2012.   Again, little attention was given to Mrs. Hawkins by the nursing home staff though her suffering was great.   An employee of the Defendants purportedly checked Mrs. Hawkins' glucose level at 4:30 p.m. on October 25, 2012, and recorded the level at 468.   Subsequent events would lead to

---

the conclusion that her actual glucose level would have far exceeded 468. Nonetheless, a test result of 468 was well above the level which required an immediate report to Mrs. Hawkins' physician and the nurses employed by the Defendants failed to report the reading. Again, there was no attention given to the insulin pump of Mrs. Hawkins.

      4.11    On October 25, 2012, at 4:00 p.m., it was noted by an employee of Defendants that Mrs. Hawkins "rouses slowly to verbal and tactile stimuli," but no report was made to her physician. No further recorded attention was given to Mrs. Hawkins for approximately an hour and a half. At 5:30 p.m., it was noted that Mrs. Hawkins was totally unresponsive, skin was cool to touch, respiration was labored, and they were unable to get a blood pressure reading. A 911 call was made. Upon arrival at the nursing home, the EMTs started CPR and attempted to intubate Mrs. Hawkins but were unable to do so because of the presence of vomit in her throat. They were able, however, to restore a faint heart beat and removed her to the emergency room at East Texas Medical Center in Clarksville. There, at 6:18 p.m., the glucose level of Mrs. Hawkins was recorded at 1120, ten (10) times the normal level. The medical providers determined that she had suffered cardiac arrest as a result of "diabetic complication." Though tests at the Clarksville emergency room concluded that Mrs. Hawkins was essentially brain dead, she was transported on life support to Wadley Regional Medical Center in Texarkana, Texas. At Wadley on October 27, 2012, the Plaintiffs received the final medical opinion that there was no hope for their loved one, and the sad, anguished decision was made to disconnect Mrs. Hawkins from life support. On October 27, 2012, approximately 72 hours after the fall, Mrs. Hawkins was pronounced dead.

      4.12    The total lack of care of Mrs. Hawkins by the Defendants' employees, as stated above, was the direct and proximate result of the Defendants' failure to have in place policies and

procedures for the proper care of Mrs. Hawkins and the Defendants' failure to provide training
and supervision of their employees for the proper care of Mrs. Hawkins.

### V. NEGLIGENCE OF NEXION HEALTH AT BOGATA, INC. D/B/A REGENCY HEALTHCARE AND REHABILITATION CENTER AT RED RIVER; NEXION HEALTH MANAGEMENT, INC.; NEXION HEALTH LEASING, INC.; NEXION HEALTH OF TEXAS, INC.; AND NEXION HEALTH, INC.

5.1     Nexion Health at Bogata, Inc. d/b/a Regency Healthcare and Rehabilitation Center
at Red River; Nexion Health Management, Inc.; Nexion Health Leasing, Inc.; Nexion Health of
Texas, Inc. and Nexion Health, Inc. were negligent and failed to meet the applicable standard of
care and the treatment and care of Elizabeth Paige Hawkins. Nexion Health at Bogata, Inc. d/b/a
Regency Healthcare and Rehabilitation Center at Red River; Nexion Health Management, Inc.;
Nexion Health Leasing, Inc.; Nexion Health of Texas, Inc. and Nexion Health, Inc.'s negligence
in their care and treatment of Elizabeth Paige Hawkins proximately caused her death, as well as
damages alleged herein sustained by Plaintiffs.  Nexion Health at Bogata, Inc. d/b/a Regency
Healthcare and Rehabilitation Center at Red River; Nexion Health Management, Inc.; Nexion
Health Leasing, Inc.; Nexion Health of Texas, Inc. and Nexion Health, Inc. were negligent in the
following particulars, each of which, taken separately or collectively, constitute a direct and
proximate cause of the injuries and damages alleged herein:

  a.     Failure to prevent Mrs. Hawkins from going outside of the nursing home
         building on or about October 24, 2012;

  b.     Failure to provide supervision for Mrs. Hawkins when she was outside of
         the nursing home building on or about October 24, 2012;

  c.     Failure to have a policy and procedure for residents who were at risk for
         elopement;

d.     Failure to train and supervise staff concerning residents at risk for elopement;

e.     Failure to adequately train and supervise staff concerning residents at risk for elopement;

f.     Failure to truthfully report to healthcare providers the nature and extent of the fall which caused injury to Mrs. Hawkins;

g.     Failure to render prompt medical attention so there is no delay in seeking necessary medical care;

h.     Failure to have a policy and procedure for reporting of incidents causing injury to residents;

i.     Failure to train and supervise staff in reporting incidents causing injury to residents;

j.     Failure to adequately train and supervise staff in reporting incident causing injury to residents;

k.     Failure to adequately monitor the glucose level of Mrs. Hawkins on October 24 and 25, 2012;

l.     Failure to have a policy and procedure for adequately monitoring the glucose levels of diabetic residents;

m.     Failure to train and supervise staff to ensure that the glucose levels of diabetic residents are adequately monitored;

n.     Failure to adequately train and supervise staff to ensure that the glucose levels of diabetic residents are adequately monitored;

o.     Failure to test, assess and report the glucose level of Mrs. Hawkins on October 24-25, 2012;

p.     Failure to adequately test, assess and report the glucose level of Mrs. Hawkins on October 24-25, 2012;

q.     Failure to have a policy and procedure for adequately testing, assessing and reporting the glucose levels of diabetic residents;

r.     Failure to adequately train and supervise staff to ensure that the glucose levels of diabetic residents are properly tested, assessed and reported;

---

s.      Failure to monitor and correctly use Mrs. Hawkins' insulin pump;

t.      Failure to have a policy and procedure for monitoring and the correct use of insulin pumps for diabetic residents;

u.      Failure to train and supervise the staff in the monitoring and the correct use of insulin pumps for diabetic residents;

v.      Failure to adequately train and supervise the staff in the monitoring and the correct use of insulin pumps for diabetic residents;

w.      Failure to report the excessive glucose levels of Mrs. Hawkins to her physician;

x.      Failure to have a policy and procedure for reporting excessive glucose levels of diabetic residents to their treating physician as directed by their physician;

y.      Failure to train and supervise staff to ensure that excessive glucose levels of diabetic residents were reported to their treating physician as directed by their physician;

z.      Failure to adequately train and supervise staff to ensure that excessive glucose levels of diabetic residents were reported to their treating physician as directed by their physician;

aa.     Failure to adequately train and supervise staff to ensure that excessive glucose levels of diabetic residents were reported to their treating physician;

bb.     Failure to control the blood sugar of Mrs. Hawkins;

cc.     Failure to train and supervise staff concerning the harmful effect of trauma for a brittle diabetic resident;

dd.     Failure to have written policies and procedures for enhanced monitoring in reporting of brittle diabetic residents who have suffered trauma;

ee.     Failure to report to her physician a change in condition of Mrs. Hawkins;

ff.     Failure to have a policy and procedure for reporting change of condition of a resident;

gg.     Failure to train and supervise staff to require reporting of change of condition of a resident;

hh.   Failure to adequately train and supervise staff to require reporting of change
      of condition of a resident;

ii.   Failure to report to treating physicians the failure of diabetic residents to
      consume food necessary for the resident's condition;

jj.   Failure to have a policy and procedure requiring reporting to treating
      physician the failure of a diabetic resident to consume food necessary for
      the resident's condition;

kk.   Failure to train and supervise staff to report to a diabetic resident's treating
      physician the failure of the resident to consume food necessary for the
      resident's condition;

ll.   Failure to adequately train and supervise staff to report to a diabetic
      resident's treating physician the failure of the resident to consume food
      necessary for the resident's condition;

mm.   Failure of the staff to call 911 for the immediate assistance and
      transportation of Mrs. Hawkins to the nearest emergency department for
      evaluation and treatment after they learned of her fall and injury on or about
      October 24, 2012;

nn.   Failure to have policies and procedures for calling 911 for immediate
      assistance and transportation of injured residents to the nearest emergency
      department;

oo.   Failure to adequately train and supervise staff requiring them to call 911 for
      immediate assistance and transportation of an injured resident to the nearest
      emergency department;

pp.   Failure to ask and consult with Mrs. Hawkins' physician for clarification on
      acceptable parameters of blood glucose readings and when readings outside
      those parameters were to be reported to the physician for his evaluation and
      treatment;

qq.   Failure to have policies and procedures requiring staff to consult the
      physician for a diabetic resident for clarification of acceptable parameters
      of blood glucose readings and when readings outside those parameters were
      to be reported to the physician;

rr.   Failure to adequately train and supervise staff to consult with the physician
      of a diabetic resident on acceptable parameters of blood glucose readings
      and when readings outside those parameters were to be reported to the
      physician;

ss.    Failure to report Mrs. Hawkins' changes in her condition to her physician on October 24-25, 2012;

tt.    Failure to have policies and procedures for reporting the change of condition of residents to their physician;

uu.    Failure to adequately train and supervise staff to report changes in condition of residents to their physician;

vv.    Failure to increase the assessment and monitoring of Mrs. Hawkins' condition after she experienced her fall and injuries on October 24, 2012;

ww.   Failure to have policies and procedures to increase assessments and monitoring of residents who have suffered injury;

xx.    Failure to adequately train and supervise staff to increase their assessments and monitoring of residents who have suffered injury;

yy.    Failure to comply with Mrs. Hawkins' care plan;

zz.    Failure to have policies and procedures requiring staff to follow residents' care plan;

aaa.   Failure to adequately train and supervise staff to require the compliance with care plans of residents;

bbb.   Failure to report the events of Mrs. Hawkins' fall and injuries to the EMS when they arrived at the facility on October 24, 2012;

ccc.   Failure to have policies and procedures for advising emergency personnel of events related to a resident's injury;

ddd.   Failure to adequately train and supervise staff to report events surrounding a resident's injury to emergency personnel;

eee.   Failure to know the effects of medication, correctly administer and document those medications and report the resident's response to other health care team members including the physician;

fff.    Failure to have policies and procedures for the staff to know the effects of medications, correctly administer and document those medications, and report the resident's response to other health care team members, including the physician;

ggg. Failure to adequately train and supervise staff to know the effects of medications, correctly administer and document those medications, and report the resident's response to other health care team members, including the physician;

hhh. Failure to accurately document Mrs. Hawkins' record of care at the facility;

iii. Failure to have policies and procedures requiring accurate documentation of a resident's records of care;

jjj. Failure to adequately train and supervise staff to accurately document the record of care of residents;

kkk. Failure to follow Mrs. Hawkins' physician's order for reporting of elevated glucose levels;

lll. Failure to have policies and procedures for the staff to follow physician's orders concerning a resident;

mmm. Failure to adequately train and supervise staff to follow a physician's orders concerning a resident;

nnn. Failure to provide appropriate and consistent orientation to employees, subsequent training to employees and supervision by administrative employees of entities controlling Regency;

ooo. Failure of the Regional Clinical Director to inspect the clinical records of Mrs. Hawkins; and

ppp. Failure to maintain accurate clinical records.

5.2    Plaintiffs would further show that the Defendants' failure to report change of Mrs. Hawkins' condition and excessive glucose levels to her physician on October 24 and 25, 2012, was negligence per se in violation of 42 Code of Federal Regulations – Public Health (CFR) 483.10(b)(11) and Texas Administrative Code (TAC) Title 40, Part 1, Chapter 19, Rule 19.403.(1).

5.3    Nexion Health at Bogata, Inc. d/b/a Regency Healthcare and Rehabilitation Center at Red River; Nexion Health Management, Inc.; Nexion Health Leasing, Inc.; Nexion Health of Texas, Inc. and Nexion Health, Inc. are, in all probability, negligent in other respects in addition

to the above and Plaintiffs reserve the right to amend their pleadings to conform to the information uncovered in the discovery process.

## VI. DAMAGES

6.1     This is a suit for injuries and the wrongful death of Elizabeth Paige Hawkins.   It is brought pursuant to the provisions of Section 71.001, et seq and Section 71.021 of the Texas Civil Practice and Remedies Code, known as the Texas Wrongful Death Act, and Texas Survival Statute, respectively.   Plaintiffs' cause of action is based on Defendants' negligence and gross negligence.

### A.   Survival Damages

6.2     In addition to the wrongful death damages that Plaintiffs are entitled to recover from Defendants, the Estate of Elizabeth Paige Hawkins is entitled to recover certain damages occurring to Mrs. Hawkins before her death and as an expense caused by her death.

6.3     Elizabeth Paige Hawkins, at the time of her death, left a valid unrevoked written Will naming the Plaintiff, Stanley Hawkins, to serve without bond as the Independent Executor her estate.   The Will was admitted to probate in the Probate Court of Red River County, Texas, on March 13, 2013, and the Plaintiff, Stanley Hawkins, was appointed as the Independent Executor of the Estate of Elizabeth Paige Hawkins to serve without bond.   On March 13, 2013, the Plaintiff, Stanley Hawkins, filed his oath with the Probate Court of Red River County, Texas, to well and truly perform all duties of Executor of the Estate of Elizabeth Paige Hawkins and he appears herein not only in his individual capacity but as the Independent Executor of the Estate of Elizabeth Paige Hawkins.

6.4     Before her death, Mrs. Hawkins suffered extreme conscious physical pain and mental anguish as a direct and proximate cause of the negligent acts and omissions of the Defendants.

Case 5:13-cv-00121-JRG-CMC Document 70 Filed 09/25/14 Page 18 of 23 PageID #: 618

6.5     As Independent Executor of the Estate of Elizabeth Paige Hawkins, Plaintiff
Stanley Hawkins is entitled to recover on behalf of the Estate of Elizabeth Paige Hawkins
compensation for damages suffered by the Estate as follows:

a.      As a direct and proximate result of the Defendants' wrongful and negligent
        acts and/or omissions, Elizabeth Paige Hawkins suffered extreme conscious
        pain and agony until her death.  Plaintiff Stanley Hawkins, as Independent
        Executor of the Estate of Elizabeth Paige Hawkins, seeks recovery for the
        physical pain and suffering and mental anguish suffered by Elizabeth Paige
        Hawkins prior to her death.

b.      As a direct and proximate result of the Defendants' wrongful and negligent
        acts and/or omissions, Elizabeth Paige Hawkins incurred reasonable and
        necessary medical expense, and Plaintiff Stanley Hawkins, as Independent
        Executor of the Estate of Elizabeth Paige Hawkins, seeks recovery of the
        reasonable and necessary medical expenses incurred by Elizabeth Paige
        Hawkins prior to her death.

c.      Elizabeth Paige Hawkins was buried in a manner reasonably suitable to her
        station in life.  Plaintiff Stanley Hawkins, as Independent Executor of the
        Estate of Elizabeth Paige Hawkins, seeks compensation for damages to her
        estate for the reasonable and necessary expense for the funeral and burial of
        Elizabeth Paige Hawkins.

### B.   Wrongful Death Damages of Stanley Hawkins

6.6     Stanley Hawkins is the surviving spouse of Elizabeth Paige Hawkins.  As a direct
and/or proximate result of Elizabeth Paige Hawkins' death, Stanley Hawkins has suffered damages
in the past and, in all reasonable probability, will continue to suffer damages in the future as
follows:

a.      Loss of companionship and society to including, but not limited to, love,
        comfort, companionship and society that Stanley Hawkins, in reasonable
        probability, would have received from Elizabeth Paige Hawkins had she
        lived.

b.      Emotional pain, torment and suffering experienced by Stanley Hawkins
        because of the death of Elizabeth Paige Hawkins.

6.7    By reason of the above and foregoing, Stanley Hawkins has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

## C. Wrongful Death Damages of Lacy Paige McKee

6.8    Lacy Paige McKee is the surviving daughter of the decedent, Elizabeth Paige Hawkins. As a direct and/or proximate result of Elizabeth Paige Hawkins' death, Lacy Paige McKee has suffered damages in the past, and in all reasonable probability, will continue to suffer in the future as follows:

    a.    Loss of companionship and society to including, but not limited to, love, comfort, companionship and society that Lacy Paige McKee, in reasonable probability, would have received from Elizabeth Paige Hawkins had she lived.

    b.    Emotional pain, torment and suffering experienced by Lacy Paige McKee because of the death of Elizabeth Paige Hawkins.

6.9    By reason of the above and foregoing, Lacy Paige McKee has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

## VII.

7.1    Plaintiffs would show that the Defendants' failures as set out above in paragraph V were continuous during Mrs. Hawkins' residency at Regency for approximately eight months, and such failures, at a critical stage on October 24 and 25, 2012, were a proximate cause of Mrs. Hawkins' death.

7.2    The failures of the Defendants, as stated above, were acts and omissions of agents of the Defendants committed within the scope of their employment while in a management capacity or performing absolute duties of the Defendants.

7.3.    The acts, omissions and failures were gross negligence in that the acts, omissions and failures, when viewed objectively from the Defendants' standpoint at the time of the conduct,

involved an extreme degree of risk, considering the probability and magnitude of potential harm to Mrs. Hawkins (and others), and Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Mrs. Hawkins (and others).    Plaintiffs, therefore, seek exemplary damages within the jurisdictional limits of the court.

## VIII. DISREGARD OF CORPORATE FICTION

8.1    Plaintiffs would show that one or more of the Nexion Defendants is jointly and severally liable for the conduct of Regency alleged in paragraphs III through V and VII of this Complaint because one or more of the Nexion Defendants are the alter ego of Regency.

8.2    Plaintiffs would show that one or more of the Nexion Defendants is jointly and severally liable for the wrongful conduct of Regency alleged in paragraphs III through V and VII of this Complaint because Regency is a wholly owned subsidiary of one or more of the Nexion Defendants and the parent subsidiary arrangement is being used by one or more of the Nexion Defendants as a sham to perpetrate or cloak to conceal fraud, wrongs and injustice.

8.3    The following are grounds for disregarding the corporate fiction though not all inclusive as discovery is ongoing:

    a.    One or more of the Nexion Defendants is the sole shareholder of Regency;

    b.    There is a failure to distinguish in ordinary business between Regency and one or more of the Nexion Defendants.

    c.    One or more of the Nexion Defendants pay the vendors of Regency;

    d.    One or more of the Nexion Defendants pay the employees of Regency;

    e.    One or more of the Nexion Defendants serve as the human resource, legal and accounting departments for Regency;

f.    One or more of the Nexion Defendants have declared in public filings that they control Regency;

g.    One or more of the Nexion Defendants have officers and directors common to Regency;

h.    Regency owns few or no assets;

i.    One or more Nexion Defendants receive the net revenue from Regency;

j.    Employees from one or more Nexion Defendants supervise Regency in clinical care of residents and operation of the facility;

k.    One or more Nexion Defendants require regular reports concerning expenses and revenues from Regency;

l.    In order for Regency to change policy, Regency must secure permission from employees of one or more Nexion Defendants;

m.    One or more Nexion Defendants must approve the yearly operating budget of Regency; and

n.    Regency, though responsible for the care, safety and well-being of the residents, has few, if any, assets and almost no liability insurance to cover claims of injury made by the residents.

## IX. NOTICE PROVISIONS

9.1    Plaintiffs have complied with the Texas Civil Practice and Remedies Code, sec. 74.051.

9.2    Pursuant to Texas Civil Practice and Remedies Code §74.053, Plaintiffs do not state the amount of money by which they have been damaged but sate that such sum is well within the jurisdiction of this Court.

## X.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

---

**Plaintiffs' Third Amended Original Complaint**                   **Page 21 of 23**

## XI.   PRAYER FOR RELIEF

PREMISES CONSIDERED, Plaintiffs request the Defendants be cited to appear and answer and, that on final trial, Plaintiffs have:

a.   Judgment against Defendants for Plaintiffs' actual damages as set forth above in an amount within the jurisdictional limits of this Court;

b.   Exemplary damages;

c.   Pre-judgment and post-judgment interest as provided by law;

d.   Costs of court; and

e.   Such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**SMITH WEBER, L.L.P.**
5505 Plaza Drive - P.O. Box 6167
Texarkana, TX 75505
Telephone: 903/ 223-5656
Facsimile: 903/223-5652

By:   */s/ J. Michael Smith*
**J. Michael Smith** - *Lead Attorney*
Texas State Bar ID No. 18630500
E-Mail:  msmith@smithweber.com
**C. David Glass**
Texas State Bar No. 24036642
E-mail:  dglass@smithweber.com

ATTORNEYS FOR PLAINTIFFS

---

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was electronically filed with the Clerk of the Court using the CM/ECF system on this 25th day of September, 2014, which will send notification of such filing to the following parties:

Gregory N. Ziegler
Jason A. Burris
MacDonald Devin, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270

_/s/ J. Michael Smith_

J. Michael Smith
